[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 16, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11842
Non-Argument Calendar

_____

D. C. Docket No. 04-00314-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL ARMOUR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 16, 2005)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Nathaniel Armour appeals his 24-month sentence for theft of mail matter, in violation of 18 U.S.C. § 1708. Armour, a ramp employee with Delta Air Lines ("Delta"), pled guilty to the theft of 25 pieces of registered mail contained in concentration and convoy ("C&C") containers, which are used by the United States Postal Service to secure and transport registered mail. Armour admitted to stealing and pawning items from 10 or 12 C&C containers, including jewelry and loose diamonds, while loading cargo on Delta flights at Hartsfield-Jackson International Airport. At sentencing, the Postal Inspector testified that each container on average held between ten and fifteen pieces of mail and that Armour had taken, reviewed or opened between 100 and 200 pieces of mail. The district court concluded that Armour's offense involved in excess of 50 victims and applied the four-level victim enhancement in U.S.S.G. § 2B1.1(b)(2)(B) (2003).

On appeal, Armour argues that the district court erred in concluding that his offense involved at least 50 victims and in then applying the four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B).[1] Specifically, Armour asserts that his offense involved only 24 victims.

_____

[1] At sentencing, Armour also argued that the application of U.S.S.G. § 2B1.1's victim enhancement presented "a procedural problem" under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531(2004). Armour does not raise that claim on appeal, and it is therefore abandoned. See United States v. Magluta, 418 F.3d 1166, 1185-86 (11th Cir. 2005).

Questions of law arising under the Sentencing Guidelines are reviewed de novo, and the district court's findings of fact are reviewed for clear error. United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005). Although the Guidelines are advisory rather than mandatory under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), the district court must consult the Guidelines and, in doing so, must calculate the Guidelines range accurately. Crawford, 407 F.3d at 1178-79. After review, we conclude that the district court did not err in applying the U.S.S.G. § 2B1.1 victim enhancement when it calculated Armour's Guidelines range.

Under U.S.S.G. § 2B1.1(b)(2)(B), a defendant's base offense level is increased by four levels if the theft offense involved fifty or more victims. For purposes of § 2B1.1(b)(2), a victim is defined as "(A) any person who sustained any part of the actual loss . . . or (B) any individual who sustained bodily injury as a result of the offense." U.S.S.G. § 2B1.1 cmt. n.1. The Guidelines contain an extensive commentary regarding how this enhancement shall be applied when the offense involves undelivered United States mail. See United States v. Inclema, 363 F.3d 1177, 1180 (11th Cir. 2004) (stating that the text of the Guidelines and its accompanying commentary should be read together). We quote that commentary in full:

Undelivered United States Mail. –

(i) In General. – In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offenses, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, "victim" means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.

(ii) Special Rule. – A case described in subdivision (B)(i) of this note that involved a Postal Service (I) relay box; (II) collection box; (III) delivery vehicle; or (IV) satchel or cart, shall be considered to have involved at least 50 victims.

(iii) Definition. – "Undelivered United States mail" means mail that has not actually been received by the addressee or his agent (e.g., mail taken from the addressee's mail box).

U.S.S.G. § 2B1.1 cmt. n.4(B) (emphasis supplied). This special rule was "provided for application of the victim enhancement for offenses involving United States mail because of (i) the unique proof problems often attendant to such offenses, (ii) the frequently significant, but difficult to quantify, non-monetary losses in such offenses, and (iii) the importance of maintaining the integrity of the United States mail." U.S.S.G. app. C, Amendment 617.

As shown above, the commentary to § 2B1.1 sets forth a special rule which provides that mail theft "shall be considered to have involved at least 50 victims" when the theft of undelivered United States mail involves "a Postal Service . . .

4

delivery vehicle . . . ." U.S.S.G. § 2B1.1 cmt. n.4(B)(ii).  A "vehicle" is defined as "a means of carrying or transporting something" or "a container in which something is conveyed."  Webster's Third New International Dictionary 2538 (1993).  Therefore, the plain and ordinary meaning of the phrase "delivery vehicle" in the special rule includes the C&C containers used by the Postal Service in this case to carry or transport mail for delivery.  See United States v. Singh, 291 F.3d 756, 761 (11th Cir. 2002) ("[L]anguage in the Sentencing Guidelines is to be given its plain and ordinary meaning.  Further, where the guidelines provide no indication as to a particular application[,] the Court looks to the language and purpose of the Sentencing Guidelines for instruction.").

More specifically, the C&C containers in this case fit this description of a delivery vehicle because they are used by the Postal Service to transport registered mail by airplane from one city for delivery in another city.  In addition, the evidence showed that each of the 10 or 12 containers Armour opened contained an average of 10 to 15 pieces of mail and that he rifled between 100 and 200 pieces of mail, sufficient evidence also to support a finding of at least 50 victims.  Thus, the district court did not err in applying the four-level victim enhancement.

Armour emphasizes that only 24 victims filed a claim against the Postal Service.  However, application of the special rule is not contingent upon the

5

number of victims filing claims, but rather upon the involvement of a delivery vehicle, such as the C&C containers.

Additionally, we disagree with Armour's claims that his offense involved only 24 victims and that there are no "proof problems" when mail is stolen from a C&C container as opposed to some other container used to collect or transport mail. Although C&C containers are inventoried when they reach their destination, the Postal Inspector testified that it remains difficult to determine the total number of victims when one of these containers is breached because an inventory does not reveal whether something has been taken from a piece of mail. Notably, Armour's 24-victim figure is unlikely to include victims with non-monetary losses.[2] As the Postal Inspector explained, the C&C containers hold registered mail and some of that registered mail contains items of importance to the mail customer that have little or no monetary value. However, the Postal Service will not be aware of this loss unless the customer files a complaint, something a victim is less likely to do if the loss is not monetary. One of the stated purposes of the special rule is to address the difficulty in quantifying non-monetary losses in mail theft offenses. Another stated purposes is to ensure the integrity of the United States mail. Both purposes are advanced by application of the enhancement in Armour's case.

---

[2] For example, the 24-victim figure does not include two compact discs containing top secret military information, one of which Armour admitted taking.

Because we find no reversible error in the district court's application of the four-level victim enhancement to Armour's case, we affirm Armour's 24-month sentence.

AFFIRMED.